UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAST COAST AESTHETIC SURGERY NJ,<br><br>Plaintiff,<br><br>-against-<br><br>WELLRITHMS, INC.,<br><br>Defendant. | Index No.:<br><br>**COMPLAINT** |

Plaintiff, East Coast Aesthetic Surgery NJ ("Plaintiff"), in his own capacity and on assignment of M.D., by and through its attorneys, Gottlieb and Greenspan, LLC, by way of Complaint against Wellrithms, Inc. ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a New Jersey medical practitioner registered to do business in the State of New Jersey with a principal place of business at 125 Prospect Avenue, Hackensack, New Jersey 07601.

2. Upon information and belief, Defendant is a co-fiduciary of an employer-based health care plan issued in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance plan at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

4. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within the District.

1

**FACTUAL BACKGROUND**

5. Plaintiff is a medical provider who specializes in plastic surgery and often treats patients in emergency situations.

6. On or around May 26, 2020, Plaintiff performed emergency surgery on a patient identified as "M. D." ("Patient") in Hackensack, New Jersey. (*See*, **Exhibit A**, attached hereto.)

7. At the time of her treatment, Patient was a six-month-old baby who sustained a traumatic injury to her foot resulting in a deep laceration. *Id*.

8. Patient's injury occurred at the height of the initial COVID pandemic crisis, at a time when hospitals were saddled with serious cases of COVID-19. Therefore, Patient's family was fearful to present to the emergency room despite the emergent nature of Patient's injury.

9. Patient's mother contacted Plaintiff as Plaintiff is a plastic surgeon affiliated with Hackensack University Medical Center. Plaintiff agreed to see Patient in Plaintiff's Hackensack based office where Plaintiff ultimately performed emergency surgery on Patient. *Id*.

10. At the time of her treatment, Patient was the beneficiary of a self-funded employer-based health insurance plan.

11. Patient assigned her applicable health insurance rights and benefits to Plaintiff. (*See*, **Exhibit B**, attached hereto.)

12. After treating Patient, Plaintiff submitted a Health Care Financing Administration ("HCFA") medical bill to Patient's insurance plan's claims administrator seeking payment for the performed treatment in the total amount of $19,225.00. (*See*, **Exhibit C**, attached hereto.)

13. As an out-of-network provider, Plaintiff does not have a network contract that would determine or limit payment for Plaintiff's treatment of Patient. Rather, payment for Patient's treatment is governed by the terms of Patient's insurance plan.

14. In response to Plaintiff's HCFA medical bill, Defendant, on behalf of Patient's insurance plan, issued payment in the total amount of $1,091.56. (*See*, **Exhibit D**, attached hereto.)

15. Subsequently, Plaintiff submitted a bill to Patient seeking the unpaid portion of its charges.

16. As an out-of-network provider, Plaintiff is entitled to its billed charges for services rendered. Since Patient's insurance plan is self-funded, Patient is responsible for any portion of Plaintiff's charges not covered by Patient's insurance plan.

17. Moreover, many insurance plans take the position that out-of-network providers are *required* to bill their patients for any unpaid charges, and they routinely audit out-of-network providers to verify that providers are not waiving such charges.

18. Thus, Plaintiff submitted a bill to Patient for the unpaid portion of his charges.

19. In response to Plaintiff's bill, Patient submitted an internal appeal to the insurance plan disputing the plan payment as inconsistent with the plan terms for out-of-network emergency treatment.

20. In response to Patient's appeal, Defendant sent a "cease and desist" letter to Plaintiff stating, *inter alia*, that Plaintiff is to "immediately and (*sic*) stop all collection activity against [Patient]." (*See*, **Exhibit E**, attached hereto.)

21. Defendant's letter also represented that Defendant is a co-fiduciary of Patient's health plan, and instructed that "ANY and ALL communications, or attempts to collect an amount above and beyond the Allowed Amount should be directed to [Defendant]." *Id*.

22. Defendant's letter further stated that the reason Plaintiff had no right to bill Patient for the unpaid portion of its charges is because the health plan's payment was consistent with usual, customary, and reasonable ("UCR") rates. *Id*.

23. However, Plaintiff's charges are consistent with UCR rates as confirmed by the seminal, objective UCR database.

24. Indeed, the database confirming Plaintiff's charges as consistent with UCR is utilized by the States of New York and New Jersey in adjudicating UCR disputes.

25. Defendant does not represent which UCR data it relied upon. Most likely, Defendant did not rely upon any database at all because its reimbursement is less than 6% of Plaintiff's UCR charges. It defies logic and common sense for there to exist two UCR databases that produce such radically different results.

26. Moreover, even if Plaintiff's charges *were* in excess of UCR, it would not preclude Plaintiff from billing its patient for the unpaid portion of its charges. As noted, if Plaintiff were to merely waive the charges, it would expose itself to risk of audit and accusations of untoward billing practices.

27. As noted in Defendant's letter, under the terms of Patient's insurance plan, Patient's emergency medical treatment was subject to reimbursement at UCR rates.

28. However, per Defendant's determination, Patient's treatment was paid at substantially less than UCR rates.

29. Moreover, Defendant interfered with Plaintiff's ability to collect the remaining balance from Patient with no legal justification.

30. As a result, Plaintiff has been damaged in the amount of $18,133.44.

31. Accordingly, Plaintiff brings this action for recovery of the outstanding balance.

## COUNT ONE

## FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)

32. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as though fully set forth herein.

33. Plaintiff avers this Count to the extent ERISA governs this dispute.

34. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

35. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient.

36. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

37. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA plan or policy.

38. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## COUNT TWO

## TORTIOUS INTERFERENCE WITH CONTRACT

39. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40. On or around May 26, 2020, Plaintiff performed emergency surgery on Patient.

41. In connection with that treatment, Patient entered into an express or implied contractual agreement with Plaintiff to pay for any emergency medical charges not covered by her insurance plan.

42. Plaintiff's medical charges for the emergency surgery rendered total $19,225.00.

43. Defendant approved payment for Patient's surgery in the total amount of $1,091.56.

44. Defendant represented to Plaintiff and Patient that Patient was not liable for the balance of Plaintiff's charges.

45. Defendant further sent a "cease and desist" letter to Plaintiff demanding that Plaintiff refrain from pursuing any collection activities against Patient.

46. Defendant's misrepresentation of Plaintiff's liability prevented Plaintiff from pursuing Patient for that balance.

47. Thus, Defendant tortiously interfered with the express and implied contract between Plaintiff and Patient regarding Plaintiff's receipt of payment for his services.

48. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order directing Defendant to pay Plaintiff $18,133.44;
B. For an Order directing Defendant to pay Plaintiff all benefits Patient would be entitled to under her applicable insurance plan administered by Defendant;
C. For compensatory damages and interest;
D. For attorney's fees and costs of suit; and
E. For such other and further relief as the Court may deem just and equitable.


Dated: Oakland, NJ
       September 19, 2023

                                    GOTTLIEB AND GREENSPAN, LLC
                                    *Attorneys for Plaintiff*


                              By:   /s/ Michael Gottlieb
                                    Michael Gottlieb
                                    169 Ramapo Valley Road, Suite ML3
                                    Oakland, NJ 07436
                                    (201) 644-0896