# EXHIBIT A





## DICTATION

OPERATIVE REPORT

PATIENT NAME: M▇ D▇
DATE OF SURGERY: 05/26/2020
MRN #: 4126

SURGEON: Robert Morin, MD

PREOPERATIVE DIAGNOSIS: Acquired open wound, left dorsal foot laceration, 3.6 cm.

POSTOPERATIVE DIAGNOSIS: Acquired open wound, left dorsal foot laceration, 3.6 cm.

PROCEDURES PERFORMED: Irrigation, debridement, and complex repair of acquired open wound, left dorsal foot laceration, 3.6 cm.

ANESTHESIA: Local anesthesia using lidocaine 1% with epinephrine.

SPECIMENS: There were no specimens.

DRAINS: There were no drains.

COMPLICATIONS: There were no complications.

ESTIMATED BLOOD LOSS: Approximately 5 mL.

INDICATIONS: This is a 6-year-old girl, who presented to East Coast Aesthetic Surgery's office emergently, with her mother, after sustaining a traumatic injury to her foot. The patient sustained a deep laceration involving the dorsal surface of her left foot while playing on a slip and slide in the front yard of her home. The patient's mother subsequently brought the patient to the office for an emergent laceration repair. The patient's mother refused to go to a hospital emergency room due to the current concerns related to the high local case numbers, infection risk and hospital capacity and supply constraints associated with the COVID-19 pandemic. It was, therefore, indicated to take the patient to the procedure room in order to perform the above-mentioned emergent procedure. The patient was treated in good faith, in the office procedure room, during the presidential Stafford Act emergency disaster declaration, due to the emergent nature of the injury. All COVID-19 precautions were taken and all CDC guidance and state executive orders were strictly followed.

Prior to the possible, all possible risks, benefits, alternatives, and complications were discussed with the patient and the patient's mother at length. Both the patient and the patient's mother had an opportunity to ask questions. Once all of their questions were answered and once they fully understood all the possible risks and complications which included but were not limited to infection, bleeding, injury to nerves, injury to deeper and surrounding structures, poor wound healing, wound dehiscence, poor scarring, foot deformities, foot contour irregularities, foot asymmetry, foot dysfunction, difficulty with ambulation, an unacceptable cosmetic result, and the need for multiple additional surgical procedures in the future, the patient agreed to proceed with the surgery. Therefore, informed consent was obtained.



Of note, although this type of emergent laceration repair would normally take place in an emergency room, the patient was seen and the procedure was performed in the office setting, due to the COVID-19 pandemic, in an effort to prevent transmission of COVID-19, by keeping a healthy patient out of the emergency room.

OPERATIVE REPORT: The patient was correctly identified in East Coast Aesthetic Surgery's procedure room. Informed consent was obtained from the patient's mother and the patient was placed in the supine position on the procedure room table. Lidocaine 1% with epinephrine was then injected into and around the acquired open wound which was located on the dorsal surface of the patient's proximal left foot. A sufficient amount of time was allowed for lidocaine with epinephrine to take effect, and during this time, the acquired open wound was irrigated with a copious amount of normal saline irrigation and the patient's left foot and ankle were prepped and draped in the usual sterile fashion using Betadine.

The procedure began by evaluating the acquired open wound, which was measured to be 3.6 cm in total length. The laceration was L-shaped with a large and poorly perfused jagged flap of skin and underlying soft tissue. The skin edges were found to be heavily damaged, crushed, poorly perfused, and tangentially cut. The laceration extended deep through the full thickness of the skin into the subcutaneous tissue. There was a significant amount of avulsed subcutaneous tissue within the acquired open wound. No lacerations of deeper vital structures including tendons, arteries or nerves were identified and the patient was found to have full function, perfusion, and sensation of the foot and toes.

Based on this evaluation, it was determined that an extensive amount of debridement would be necessary in order to sharply excise all of the heavily damaged, poorly perfused, and tangentially cut, skin and avulsed subcutaneous tissue. Therefore, a straight iris scissor was used in order to perform this extensive sharp surgical debridement. Sharp surgical debridement continued until all of the heavily damaged, poorly perfused, tangentially cut and avulsed, skin and subcutaneous tissue was excised and only healthy appearing, cleanly cut and well perfused skin and subcutaneous tissue remained.

Once this extensive debridement was complete, based on the width of the acquired open wound, it was determined that an extensive amount of undermining would be necessary in order to allow for the advancement of the skin edges and a tension-free primary repair. Therefore, the curved iris scissor was used in order to perform this extensive undermining. Extensive undermining continued circumferentially around the entire acquired open wound until it was determined that the skin edges could be advanced, everted, and primarily repaired without tension and without any contour irregularities or deformities.

Once this had been accomplished, meticulous hemostatic was ensured, the wound was once again irrigated with a copious amount of normal saline irrigation and a layered repair was begun. 4-0 Monocryl was used first in a buried interrupted fashion in order to approximate subcutaneous tissue and deep dermis. Many 4-0 Monocryl buried interrupted sutures were placed in order to ensure a secure repair. Once the deep layers of the layered repair were anatomically aligned, many 5-0 nylon simple interrupted sutures were placed in order to meticulously approximate the epidermis.

At the completion of the layered repair, the patient's foot was evaluated. The skin edges were found to be well perfused and under no tension and there were no deformities or contour irregularities involving the patient's foot. Therefore, a bacitracin ointment, Xeroform gauze, Kerlix gauze, and 4-inch ACE wrap gentle compression dressing was applied.

All postoperative instructions were then given to both the patient and the patient's mother including wound care instructions, medication instructions and an appointment to follow up with me in my office in one week. The patient tolerated the procedure well, there were no complications and all surgical counts were correct at the completion of the procedure. A prescription for antibiotics was sent to the patient's pharmacy. The patient was subsequently discharged home in stable condition in the company of her mother.

5/26/2020 - East Coast Aesthetic Surgery NJ



 5/27/2020 4:24 PM

Robert J. Morin, M.D.

**EXHIBIT B**



## ASSIGNMENT OF BENEFITS
## &
## LIMITED POWER OF ATTORNEY

I irrevocably assign to you, my medical provider, all of my rights and benefits under my insurance contract for payment for services rendered to me. I authorize you to file insurance claims on my behalf for services rendered to me and this specifically includes filing arbitration/litigation in your name on my behalf against the PIP carrier/healthcare carrier/worker's compensation carrier. I irrevocably authorize you to retain an attorney of your choice on my behalf for collection of your bills. I direct that all reimbursable medical payments go directly to you, my medical provider. I authorize and consent to your acting on my behalf in this regard and in regard to my general health insurance coverage pursuant to the "benefit denial appeals process" as set forth in the New Jersey Administrative Code.

In the event the insurance carrier responsible for making medical payments in this matter does not accept assignment, or my assignment is challenged or deemed invalid, I execute this limited/special power of attorney and appoint and authorize your collection attorney as my agent and attorney to collect payment for your medical services directly against the carrier in this case, in my name, including filing an arbitration demand or lawsuit. I specifically authorize the attorney to file directly against that carrier in my name or in your name as a medical provider rendering services to me and designate your collection attorney as my attorney in fact. I further grant limited power of attorney to you as my medical provider to receive and collect directly from the insurance carrier money due you for services rendered to me in this matter, and hereby instruct the insurance carrier to pay you directly any monies due you for medical services you rendered to me. I authorize you and your attorney to receive from my insurer, immediately upon verbal request, all information regarding last payment made by said Insurer on my claim, including date of payment and balance of benefits remaining.

I authorize you and your attorney to obtain medical information regarding my physical condition from any other health care provider, including hospital, diagnostic centers, etc., and I specifically authorize such healthcare provider(s) to release all such information to you about me, including medical reports, x-ray reports, narrative reports, and any other report or information regarding my physical condition.

**Patient Name** _____ M■ Dy■■■■■ _____

**Patient/Parent/Guardian Signature** ____ [signature] _____

**Date** ____ 05/26/20 _____

5

**EXHIBIT C**



# HEALTH INSURANCE CLAIM FORM
APPROVED BY NATIONAL UNIFORM CLAIM COMMITTEE (NUCC) 02/12

HORIZON BCBS OF NEW JERSEY BLUECARD
P O BOX 1301
NEPTUNE   NJ   07754

| # | Field | Value |
|---|---|---|
| 1 | Insurance Type | OTHER (X) |
| 1a | INSURED'S I.D. NUMBER | [redacted] |
| 2 | PATIENT'S NAME | D[redacted] M[redacted] |
| 3 | PATIENT'S BIRTH DATE / SEX | F (X) |
| 4 | INSURED'S NAME | D[redacted] |
| 5 | PATIENT'S ADDRESS | [redacted], NJ |
| 6 | PATIENT RELATIONSHIP TO INSURED | Other (X) |
| 7 | INSURED'S ADDRESS | [redacted], NJ |
| 10a | EMPLOYMENT? | NO |
| 10b | AUTO ACCIDENT? | NO |
| 10c | OTHER ACCIDENT? | NO |
| 11a | INSURED'S DATE OF BIRTH / SEX | M (X) |
| 11c | INSURANCE PLAN NAME | HORIZON BCBS OF NEW JERSEY BLUECARD |
| 11d | ANOTHER HEALTH BENEFIT PLAN? | NO |
| 12 | PATIENT'S SIGNATURE | SIGNATURE ON FILE   DATE 12 23 21 |
| 13 | INSURED'S SIGNATURE | SIGNATURE ON FILE |
| 19 | ADDITIONAL CLAIM INFORMATION | MOTHER DEFERRED HOSPITAL ER DUE TO CONCERN OF COVID 19 PANDEMIC |
| 20 | OUTSIDE LAB? | NO   $ 0 00 |
| 21 | DIAGNOSIS   ICD Ind. 0 | A. S91 302A |

### 24. Services

| # | From | To | POS | EMG | CPT/HCPCS | MOD | DX | $ CHARGES | DAYS | ID | RENDERING PROVIDER ID# |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 05 26 20 | 05 26 20 | 11 | | 13132 | | A | 18900 00 | 1 | 1B / NPI | 1346415536 |
| 2 | 05 26 20 | 05 26 20 | 11 | | 99202 | 25 | A | 325 00 | 1 | 1B / NPI | 1346415536 |

| # | Field | Value |
|---|---|---|
| 25 | FEDERAL TAX I.D. NUMBER | 27 2844259   EIN (X) |
| 26 | PATIENT'S ACCOUNT NO | 4126 |
| 27 | ACCEPT ASSIGNMENT | YES (X) |
| 28 | TOTAL CHARGE | $ 19225 00 |
| 29 | AMOUNT PAID | $ 570 93 |
| 30 | Rsvd for NUCC Use | 18654 07 |
| 31 | SIGNATURE OF PHYSICIAN | ROBERT JASON MORIN MD   12 23 21 |
| 32 | SERVICE FACILITY LOCATION | EAST COAST AESTHETIC SURGERY NJ, 125 PROSPECT AVENUE SUITE 1D, HACKENSACK NJ 07601   1427363951 |
| 33 | BILLING PROVIDER INFO & PH # | ( 201 ) 488 3422   EAST COAST AESTHETIC SURGERY NJ, 125 PROSPECT AVENUE SUITE 1D, HACKENSACK NJ 07601   1427363951 |

NUCC Instruction Manual available at: www.nucc.org   PLEASE PRINT OR TYPE   CR061653   APPROVED OMB-0938-1197 FORM 1500 (02-12)

**EXHIBIT D**

 **Review and Recommendation**

| Claimant: D████ M██ | DOS: 05/26/2020 | Client: SAG-AFTRA Health Plan |
|---|---|---|
| | | Tracking No: 108696 |
| | | Claim No: 2020169MB2535-02 |
| Provider: EAST COAST AESTHETHIC SUR<br>125 PROSPECT AVE<br>HACKENSACK, NJ 076010000 | | Received Date: 8/27/2020 |

ICD-10 Codes:
DX1:S91.302A

Offsite Ref No: 17540327
Cust Doc No: 17540327
Member ID: ████████
Policy No:
Provider TIN: 272844259
Treat State: NJ

| DOS | Rev | CPT | Mod | Units | Billed | Recommended | Reasons |
|---|---|---|---|---|---|---|---|
| 5/26/2020 | | 13132 | | 1.00 | $18,900.00 | $997.49 | A001 |
| 5/26/2020 | | 99202 | 25 | 1.00 | $325.00 | $94.07 | A001 |

|  |  |
|---|---|
| Total Charges: | $19,225.00 |
| WellRithms Reductions | -$18,133.44 |
| Recommended Allowance: | $1,091.56 |

A001: Reimbursement is based upon Government, Commercial and Private Payers

Tracking No: 108696    Page: 1 of 1

**EXHIBIT E**


**FINANCIAL WELLNESS. PROVEN ALGORITHMS.**

April 28, 2021

East Coast Aesthetic Surgery NJ
Attn Margaret Candio
125 Prospect Ave, Suite 1D
Hackensack, NJ  07601

| RE: | Patient Name: | M█ D█████ | | Attachments: |
|---|---|---|---|---|
| | Date(s) of Service: | 05/26/2020 | | Review & Recommendation |
| | Claim/Account No.: | 4126 | | Participant Agreement |
| | Total Billed Charges: | $18,654.07 | | |
| | Allowable Amount: | $1,091.56 | | |

Dear Ms. Candio,

This letter serves as notice to you to immediately and stop all collection activity against M█ D█████ regarding the above referenced Claim/Account including, but not limited to, sending any future balance bills to M█ D█████, sending M█ D█████ to collections, or seeking to collect additional funds relating to this Claim/Account from any third-party agency.

WellRithms provides third-party medical bill review audits and repricing services for self-funded group health plans, workers' compensation payers in Usual, Customary, and Reasonable (UCR) jurisdictions, and self-pay patients. WellRithms' uses proprietary Sustainable Claims Pricing methodology, which is built on reasonable industry standards and local market realities that are backed by case law and meet evidentiary criteria. As such, WellRithms has determined that the Allowed Amount of $1,091.56 is Usual, Customary, and Reasonable for the services rendered on this noncontract claim.

As set forth in the Indemnification Letter, December 31, 2020, that you previously received from WellRithms, please be advised that WellRithms has been appointed as a co-fiduciary of the SAG-AFTRA Health and has assumed the management, oversight, and discretionary authority of this Claim from both the Plan and the patient. This means that WellRithms has assumed all responsibility for the above referenced Claim. As such, WellRithms has determined that the Allowed Amount of $1,091.56 for services rendered is usual, customary, and reasonable for the serviced rendered. ANY and ALL communications, or attempts to collect an amount above and beyond the Allowed Amount, should be directed to WellRithms at MBA@wellrithms.com or by phone at (971) 213-4209.

Sincerely,

*[signature]*

Ira Weintraub, MD
Chief Medical Officer

Cc: M█ D█████
     SAG-AFTRA Health

3718 SW Condor Ave, Suite 100
Portland, OR 97239                    www.wellrithms.com                    (971) 213-4209
                                                                             smba@wellrithms.com